*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0134P (6th Cir.)
File Name: 02a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
    *Plaintiff-Appellant,*

    *v.*

PAUL CORRADO; JACK W.
TOCCO; VITO W. GIACALONE;
NOVE TOCCO; ANTHONY J.
CORRADO,
    *Defendants-Appellees.*

No. 98-2315

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

Decided and Filed: April 15, 2002

Before: WELLFORD, NELSON, and GILMAN, Circuit
Judges.

---

**OPINION AND ORDER**

---

HARRY W. WELLFORD, Circuit Judge. On
September 27, 2000, this court issued a decision in *United
States v. Corrado*, 227 F.3d 543 (6th Cir. 2000), and reversed
the district court's order finding that the government was not
entitled to any forfeiture amount against defendants Jack

1

Tocco and Vito William Giacalone.  Although defendants Paul Corrado, Nove Tocco, and Anthony Corrado were joined as appellees in that appeal, we withheld our opinion as it pertained to them "pending the outcome of our remand of their related appeals."  *Corrado*, 227 F.3d at 547.  The "related appeals" referred to our decisions dated August 24 and September 8, 2000, in which we remanded those defendants' convictions for the district court to conduct a *Remmer* hearing and determine whether their trial was prejudiced by jury misconduct.  *See United States v. Paul Corrado and Nove Tocco*, 227 F.3d 528 (6th Cir. 2000); *United States v. Anthony Corrado*, Nos. 98-2394/99-1001, 2000 WL 1290343 (6th Cir. Sept. 8, 2000).  On October 10, 2000, the district court conducted the ordered hearing and concluded that the jury was not tainted at the underlying trial, and, accordingly, reinstated the three convictions.  That issue being resolved upon the remand, we now address the instant appeal pertaining to Paul Corrado, Nove Tocco, and Anthony Corrado.  For the following reasons, we **REVERSE** as to these three defendants and remand Anthony Corrado's case for the reasons stated.  Furthermore, we herein **DENY** the petition for rehearing filed by Jack Tocco and joined in by the other four defendants.

## I. FORFEITURE APPEAL PERTAINING TO PAUL CORRADO, NOVE TOCCO, AND ANTHONY CORRADO

Most of the forfeiture-related issues raised against these defendants are identical in law and fact to the issues resolved in our former opinion pertaining only to Jack Tocco and Giacalone.  We summarize the following conclusions made in our former opinion, which apply with equal force to Paul Corrado, Nove Tocco, and Anthony Corrado:

A.   A criminal forfeiture award is a part of the defendant's sentence, not a part of the substantive offense of conviction. Thus, where the government alleges that the district court's award of forfeiture (or the determination of no forfeiture) was imposed in violation of the law, the government has the

statutory authorization to appeal. *See Corrado,* 227 F.3d at 548-49; *see also* 18 U.S.C. § 3742(b).

B.    Because the criminal forfeitures in this case constituted a part of the defendants' sentences, double jeopardy principles do not apply to prohibit the government from appealing the district court's forfeiture award as to any of the defendants. *Corrado*, 227 F.3d at 549-50.

C.    The "shall forfeit" language of 18 U.S.C. § 1963(a) mandates that the district court assess forfeiture against the defendants when the facts support a finding of a sufficient nexus between the property to be forfeited and the RICO violation. *Id.* at 552.

D.    Co-conspirators participating in a RICO enterprise should be held jointly and severally liable for any proceeds of the conspiracy reasonably foreseeable from conspiratorial operations. *Id.* at 553.

E.    Unlike the general conspiracy statute, § 1962(d) requires no "overt or specific act" in carrying the RICO enterprise forward. Furthermore, "the supporters are as guilty as the perpetrators . . . so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators." *Salinas v. United States*, 522 U.S. 32, 63-64 (1997). "[I]t is not determinative that the defendant committed the crime to further his own agenda, if indeed he was only able to commit the crime by virtue of his position within the enterprise." *Id.* at 63; *see Corrado,* 227 F.3d at 552-54.

F.    The government has met the "relationship plus continuity test," which requires the government to show that the predicate acts in connection with the conspiracy were related to its illegal purposes, and that these acts constituted a threat of ongoing criminal activity. *Corrado,* 227 F.3d at 554.

We must now apply these principles to the government's argument that the district court erred in its findings that the

evidence was insufficient to support a forfeiture against Paul Corrado, Nove Tocco, and Anthony Corrado.

### A.   Paul Corrado and Nove Tocco

In our former opinion, we explained that the district court denied any forfeiture award against Paul Corrado and Nove Tocco, despite much evidence of recorded conversations between Nove and Paul regarding their collections of the $234,700 in street taxes.  In attributing the amount of street taxes against Jack Tocco and Vito Giacalone, our opinion concluded that the district court erred in requiring the government to justify said forfeiture and prove that Nove and Paul shared their collections with the other partners.  It was sufficient, in our view, that Nove and Paul were empowered by the larger organization in which Jack Tocco and Giacalone were members.

On this appeal, Paul and Nove claim that their collections of street taxes were not a part of the conspiratorial enterprise, but that the illegal activity was just between the two of them and separate from the other conspirators.  We have already rejected that position and have found that the collection of the street taxes was supported and made feasible by the larger organization.  Therefore, for the reasons more fully explained in our former opinion, the district court erred in failing to hold Paul Corrado and Nove Tocco jointly and severally liable for the forfeiture of the $234,700 in street tax proceeds.  *Id.* at 554-55.

### B.   Anthony Corrado

The government claimed that Anthony Corrado was jointly and severally liable with the other four defendants not only for the forfeiture of the $234,700 in street tax proceeds, but also that he was liable with Jack Tocco and Giacalone for the $4.2 million in profits in the conspiratorial enterprise allegedly received from the sale of two hotels in Las Vegas (the Frontier Hotel and the Edgewater Hotel), $1 million that the conspiracy extorted from Sal Vitello, and $38,400 it received in proceeds from the collection of unlawful gambling

Accordingly, we **OVERRULE and DENY** the petition for rehearing as to all defendants.

518 U.S. 267, 290.[2]

Neither of these cases, in our view, supports the argument of the defendants. We discussed fully the inapplicability of *Apprendi* in our earlier opinion, and we do not further speculate or surmise as to its future implications in the event this particular double jeopardy issue reaches the Supreme Court in light of its prior precedent. *Apprendi*, suffice it to say, involves a different issue, and is not controlling under the facts of this case.

On the other hand, the government cites *United States v. Bajakajian*, 524 U.S. 321 (1998), a case in which the Supreme Court considered the government's appeal of an adverse criminal forfeiture assessment based on Eighth Amendment proportionality principles. The Court noted that "the forfeiture of respondent's currency constitutes *punishment* and is thus a 'fine' within the meaning of the Excessive Fines Clause." *Bajakajian*, 524 U.S. at 334 (emphasis added); *see also United States v. Christunas*, 126 F.3d 765, 768 (6th Cir. 1997) (determining that a preliminary forfeiture order was appealable, but focusing on whether the order was final for purposes of appeal); and *United States v. Investment Enterprises, Inc.*, 10 F.3d 263, 270 (5th Cir. 1994) (holding specifically that "[a] review of the [Sentencing] Guidelines Manual and the relevant statutory provisions, however, lead us to conclude that a forfeiture order is a 'sentence' for purposes of § 3742(b) and thus is appealable"). This authority confirms our view that forfeiture is akin to a fine and punishment and therefore is not subject to double jeopardy constrictions.

We conclude that other asserted bases for rehearing on the forfeiture questions have been covered in our prior decision, and the defendants have raised no new and material issues for further consideration.

---

[2]In *Ursery*, Justices Scalia and Thomas stated that "the Double Jeopardy Clause prohibits successive prosecution, not successive punishment." *Id.* at 297.

debts. Thus, the government sought a total forfeiture against Anthony Corrado in the amount of $5,473,100.

Consistent with our original opinion pertaining to Jack Tocco and Giacalone, we reject the government's contention with respect to the $1 million in proceeds related to the sale of the Frontier Hotel, because "there was no evidence that any of the defendants were personally involved, nor is there any evidence to corroborate the alleged statements made by Michael [Polizzi] and related to his son regarding the involvement of the enterprise." *Corrado*, 227 F.3d at 555. Also in accordance with our earlier opinion, we remand to the district court to determine under correct standards the degree and extent, if any, of Anthony Corrado's forfeiture related to the sale of the Edgewater Hotel. *Id.* at 556. Finally, we reject the government's argument with respect to the $38,400 in unlawful gambling proceeds for the reasons explained in our original opinion. *Id.* at 557-58. Remaining for our review is the district court's decision not to hold Anthony Corrado liable for forfeiture amounts relating to the $234,700 in street tax proceeds (discussed above with respect to Paul Corrado and Nove Tocco), and the $1,000,000 that the conspiracy extorted from Sal Vitello.

With respect to the street taxes, we held that the collection of the street taxes was attributable to the criminal enterprise and, thus, we held Jack Tocco and Giacalone liable as members of that enterprise. The government argues that Anthony Corrado should also be held responsible as a "capo" of the enterprise, as the evidence of his participation in the enterprise was proven beyond a reasonable doubt. We agree with the government and now hold that Anthony Corrado should be held liable for the $234,700 in collected street taxes.

As we stated in our opinion, "[t]he government should not have been required to prove that Nove and Paul shared their collections with other partners. Nor was it required to show the proportion of sharing or to trace these extortionate collections back to each member. The entire illegal scheme

could not have succeeded were it not for the support, or the use of the name and the reputation of, the conspiratorial enterprise." *Id.* at 555. Furthermore, we noted that "[r]ecorded conversations between Nove and Paul indicate that they were working with (or for), or were empowered by, the 'capos' Jack Tocco and Anthony Corrado." *Id.* Because the evidence showed that Anthony Corrado was a member of the conspiratorial enterprise that empowered the collection of the street taxes, we hold him liable for the forfeiture of the proceeds from that illegal endeavor.

We also find that, because of his involvement in the enterprise, Anthony Corrado should be held liable for the $1,000,000 extorted from Sal Vitello. Though the district court was of the view that forfeiture was not required where there is no showing that extortion money was ever actually shared by the partnership, we held that the government need only show that Giacalone was empowered by his membership in the enterprise. Consequently, because of Anthony Corrado's involvement as a member in the enterprise, the district court erred in failing to assess against him a forfeiture amount of $1,000,000 attributable to the extortion from Sal Vitello.

Accordingly, we find that the district court erred in failing to assess against Anthony Corrado forfeiture amounts of $234,700 in street tax proceeds and $1,000,000 for the extortion from Sal Vitello. In addition, we **REMAND** to the district court to consider, along with the cases pertaining to Jack Tocco and Vito Giacalone, the degree and extent, if any, of Anthony Corrado's forfeiture related to the sale of the Edgewater Hotel.

## II.   PETITION FOR REHEARING

We now consider the petition for rehearing filed October 23, 2000, by Jack William Tocco, joined by the other

four defendants, and the government's response thereto.[1] We have carefully considered the issues presented in the petition for rehearing and the full response by the government, and we conclude that the petition to rehear must be denied.

Jack Tocco's brief raises no new issues not previously treated. We do not presume that the Supreme Court intended to overrule *Monge v. California*, 524 U.S. 721 (1998), by its decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000). *One Lot Emerald Cut Stones v. United States*, 407 U.S. 232 (1972), cited by defendant Jack Tocco in his brief in support of his double jeopardy argument, simply holds that acquittal in a criminal forfeiture proceeding does not bar a subsequent civil forfeiture proceeding against the same illegally smuggled goods. *United States v. Ursery*, 518 U.S. 267 (1996), also cited by Jack Tocco in this respect, holds that separate later civil forfeiture proceedings are not bound by double jeopardy principles following a criminal conviction for the same underlying illegal conduct because civil forfeiture does not constitute punishment. *Id.* at 274. ("Since the earliest years of this Nation, Congress has authorized the Government to seek parallel *in rem* civil forfeiture actions and criminal prosecutions based upon the same underlying events."). The Court in *Ursery* adds:

Requiring the forfeiture of property used to commit federal narcotics violations encourages property owners to take care in managing their property and ensures that they will not permit that property to be used for illegal purposes. *See Bennis v. Michigan*, 516 U.S. 442, 452 (1996) ("Forfeiture of property prevents illegal uses . . . by imposing an economic penalty, thereby rendering illegal behavior unprofitable"). . . .

---

[1] We granted the requests of the other defendants to join in Jack Tocco's petition and amended petition despite objections filed by the government.